**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| BOB HECHT, *individually and on behalf of others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL MOTORS LLC<br><br>Defendant. | **Civil Action No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Bob Hecht, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant General Motors LLC, ("GM" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## PRELIMINARY STATEMENT

1. Vehicle manufacturers have certain basic rules and procedures that must be followed. When a vehicle manufacturer sells a vehicle, it has a duty to ensure that the vehicle functions properly and safely for its advertised use and is free from defects. When a vehicle manufacturer discovers a defect, it must explicitly disclose the defect and make it right or cease selling the vehicle. When a vehicle manufacturer provides a warranty, it must stand by that warranty. This case arises from both Defendants breach of its duties and rules.

2. Plaintiff brings this action on behalf of himself, and all similarly situated persons who purchased one of the following GM vehicles equipped with a 6.2L L87 V8 engine:

- 2021-2024 Cadillac Escalade
- 2021-2024 Cadillac Escalade ESV
- 2021-2024 Chevrolet Silverado 1500
- 2021-2024 Chevrolet Suburban
- 2021-2024 Chevrolet Tahoe
- 2021-2024 GMC Sierra 1500
- 2021-2024 GMC Yukon
- 2021-2024 GMC Yukon XL

3. This action is brought to remedy various violations of law in connection with Defendants' manufacturing, marketing, advertising, selling, warranting, and servicing of the Class Vehicles.

4. The Class Vehicles have defects in the connecting rod and/or crankshaft engine components which can lead to engine damage and engine failure (the "Defect"). [1]

5. In late April 2025, GM issued a Recall for nearly 600,000 of the above-mentioned vehicle models because of this defect ("Recall")[2].

6. The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

[1] https://www.cbsnews.com/news/gm-recall-escalade-silverado-suburban-sierra-engine-failure-risk/

[2] *Id.*

7. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

8. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive marketing, advertising, and sale of Class Vehicles throughout this District.

9. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. General Motors LLC sells and distributes their vehicles throughout the United States and within this District.

## PARTIES

10. Bob Hecht is a citizen of the State of Ohio and resides in North Royalton. North Royalton is located within Cuyahoga County in Ohio.

11. General Motors LLC is a limited liability company organized and in existence under the laws of the State of Delaware with its principal place of business in Detroit, Michigan. Defendant's corporate headquarters are located at 300 Renaissance Center, Detroit, MI 48265.

12. General Motors Company owns 100% of General Motors Holdings LLC which owns 100% of General Motors LLC.

13. General Motors LLC designs, manufactures, markets, distributes, services, repairs, sells, and leases vehicles, including the Class Vehicles, nationwide. General Motors LLC is the warrantor and distributor of the Class Vehicles in the United States.

14. General Motors LLC through various entities, markets, distributes, warrants, and sells GM automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States.

**FACTUAL ALLEGATIONS**

15. Plaintiff Hecht purchased and continues to own a 2022 Cadillac Escalade equipped with a 6.2L L87 engine.

16. Plaintiff purchased his vehicle pre-owned in June of 2024 from Lindsey Cadillac in Alexandria, Virginia.

17. Based on GM's active and persistent promotions touting the quality of its vehicles and his admiration of GM vehicles, Plaintiff considered GM a quality company with a strong reputation for producing reliable vehicles and that this 2022 Cadillac Escalade was a reliable vehicle.

18. Plaintiff has never been informed of any recalls or defects related to his vehicle's Engine by anyone affiliated with GM and has heard of the Engine defects through his own experience and in the news.

19. Defendant GM has sold, directly or indirectly, through dealers, nearly 600,000 Class Vehicles nationwide.

20. The Defendant is offering a full engine replacement for vehicles that exhibit signs of the Defect. However, it will cost Plaintiff and the Class hours of their time.

21. Assuming that the Recall was effective and offered a true fix to the Defect, Plaintiff is still burdened with a vehicle that has been devalued by Defendant's actions because the value of a car with a known history of a faulty design is worth less than a vehicle with properly working engine or at least a history of a working engine with no critical issues.

22. Given the above, there is a cognizable risk inherent within this Recall. Unless Defendants are to issue a more comprehensive recall to truly fix the root cause of the Defect, it is foreseeable, and should be expected, that the Class Vehicles' Engines will fail once again.

23. In all, the Recall leaves more questions than answers regarding the Class Vehicles' safety and as such results in a diminution in value for the vehicles in question.

24. In addition to the amount of time spent in repair, Plaintiff, like every other Class Member, must spend time and money to transport himself and his defective Class Vehicle to a GM certified mechanic.

25. In all, Defendants' Recall amounts to tens of thousands of hours and dollars needlessly taken from Plaintiff and other Class Vehicle owners.

**APPLICABLE WARRANTIES**

26. GM sold the Class Vehicles with written express warranties.

27. GM provides these warranties to buyers after the purchase of the Class Vehicles is completed; buyers have no pre-sale knowledge or ability to bargain as to the terms of the warranties.

28. However, Class members complained to dealers about the Defect but did not receive an adequate repair, breaching the express and implied warranties provided by GM.

**FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS**

29. Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at GM responsible for making false and misleading statements regarding the Class Vehicles. GM is in possession of all of this information. Plaintiff's claims arise out of Defendant's fraudulent omission/concealment of

the Defect, despite their representations about the quality, safety, and comfort of the Class Vehicles.

30. Plaintiff alleges that at all relevant times, including specifically at the time he and Class members purchased their Class Vehicle, Defendant knew, or was reckless in not knowing, of the Defect; Defendant had a duty to disclose the Defect based upon their exclusive knowledge; and Defendant never disclosed the Defect to Plaintiff or the public at any time or place in any manner other than a halfhearted, inadequate recall.

31. Plaintiff makes the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Defendant:

a. **Who:** Defendant actively concealed and omitted the Defect from Plaintiff and Class members while simultaneously touting the safety and dependability of the Class Vehicles, as alleged herein. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals as Defendant is responsible for such decisions.

b. **What:** Defendant knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Defect, as alleged herein. Defendant concealed and omitted the Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

c. **When:** Defendant concealed and omitted material information regarding the Defect while making representations about the safety and dependability of the Class Vehicles on an ongoing basis, and continuing to this day, as alleged herein. Defendant still has not disclosed the truth about the full scope of the Defect in the Class Vehicles to anyone

outside of their respective entities. Defendant has never taken any action to inform consumers about the true nature of the Defect in Class Vehicles.

d. **Where:** Defendant concealed and omitted material information regarding the true nature of the Defect in every communication they had with Plaintiff and Class members and made representations about the quality, safety, and comfort of the Class Vehicles. Plaintiff is aware of no document, communication, or other place or thing, in which Defendant disclosed the truth about the full scope of the Defect in the Class Vehicles to anyone outside of their respective entities. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendant's websites. There are channels through which Defendants could have disclosed the Defect, including but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3) direct communication to Class members through means such as state vehicle registry lists.

e. **How:** Defendant concealed and omitted the Defect from Plaintiff and Class members and made representations about the quality, safety, dependability, and comfort of the Class Vehicles. Defendant actively concealed and omitted the truth about the existence, scope, and nature of the Defect from Plaintiff and Class members at all times, even though they knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and GM promised in its marketing materials that Class Vehicles have qualities that they do not have.

f. **Why:** GM actively concealed and omitted material information about the Defect in the Class Vehicles for the purpose of inducing Plaintiff and Class members to purchase Class Vehicles and made representations about the quality, safety, durability, and comfort

of the Class Vehicles. Had Defendant disclosed the truth about the engine Defect, Plaintiff and Class members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action on behalf of himself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class (Class Members) are defined as follows:

> **All persons in the United States who purchased a 2021-2024 GM vehicle equipped with a 6.2L L87 V8 engine.**

33. Plaintiff qualifies as a member of the proposed class in the preceding paragraphs.

34. Excluded from each of the putative classes are any person who is (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this action is pending.

35. The proposed class definition may be amended or modified from time to time.

36. The members of Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

37. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

38. The Proposed Classes are so numerous that the joinder of all members is impracticable.

39. This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

40. **Numerosity: Fed. R. Civ. P. 23(a)(1)** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. Preliminary estimates suggest 6000,000 vehicles were subject to the Recall. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

41. **Typicality: Fed. R. Civ. P. 23(a)(3)** Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Class Vehicle that contained the same Defect found in all other Class Vehicles.

42. **Adequacy: Fed. R. Civ. P. 23(a)(4)** Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Class that he seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class action litigation, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

43. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members, and questions of law and fact common to all Class Members predominate over questions affecting only individual class members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources.

44. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** Common Questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

a. Whether Class Vehicles contain the alleged Defect;

b. Whether the Defect would be considered material by a reasonable consumer;

c. Whether the Defect would constitute an unreasonable safety risk;

d. Whether Defendant had a duty to disclose the Defect to Plaintiff and other Class Members;

e. Whether Defendants knew or reasonably should have known of the Defect before GM sold Class Vehicles to Plaintiff and Class Members;

f. Whether the Defect has diminished the value of the Class Vehicles;

g. Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing, replacing, or otherwise remedying the Defect;

h. Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective engines;

i. Whether Defendant breached the implied warranty of merchantability pursuant to state law and/or the UCC;

j. Whether Defendant breached its express warranties under state law and/or the UCC

k. Whether Defendant is liable for fraudulent omission;

l. Whether Defendant was unjustly enriched;

m. Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY

45. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

46. Plaintiff brings this count on behalf of himself and the Class.

47. Defendant is a merchant with respect to the Class Vehicles.

48. In its written express warranties, GM expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

49. GM's express written warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased their Class Vehicles equipped with the defective engines.

50. GM breached the express warranty to repair defects in materials and workmanship within the Class Vehicles.

51. Plaintiff believes that GM was provided notice of the Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge.

52. Furthermore, the express written warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because GM has failed to adequately provide the promised remedies within a reasonable time.

53. Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies allowable by law.

54. Also, and as alleged in more detail herein, at the time that GM warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and GM improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

55. The defective design of the engines rendered them useless when utilized as intended and contrary to their expressed warranties.

56. As a direct and proximate result of the Defendants' breach of their express warranties Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

57. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

58. Plaintiff brings this count on behalf of himself and the Class.

59. Defendant is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Class Vehicles.

60. The Class Vehicles are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

61. GM entered into agreements with consumers to sell the Class Vehicles to be used by Plaintiff and Class Members for personal use.

62. The implied warranty of merchantability included with the sale of each Class Vehicle means that GM guaranteed that the Class Vehicles would be fit for the ordinary purposes for which cars are used and sold and were not otherwise injurious to consumers. The implied

warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

63. Defendant breached the implied warranty of merchantability because the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation. After all, Defendant did not indicate that the Class Vehicles would contain the Defect.

64. Given that Plaintiff and Class Members are unable to safely drive the Class Vehicles without risk of having the engine fail, the Class Vehicles are unfit for their particular purpose of legal and safe transportation and usage.

65. Defendant's warranties expressly apply to the purchaser of the Class Vehicles creating privity between Defendant and Plaintiff and Class Members.

66. Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

67. Defendant has been provided sufficient notice of its breaches of implied warranties associated with the Class Vehicles. Defendant was put on actual notice of its breach through their review of consumer complaints as well as GM's own recall.

68. Had Plaintiff, Class Members, and the consuming public known that the Class Vehicles would not be provided with properly functioning engines they would not have purchased the Class Vehicles or would have paid less for them.

69. As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

70. Plaintiff suffered injury in that he purchased a Vehicle that is worthless. For all intents and purposes, Plaintiff's vehicle is now an unsafe vehicle with a notoriously defective engine.

71. Plaintiff also suffered economic loss in reference to the value of his vehicle. As a result of GM's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles with functioning engines .

72. Plaintiff has suffered damages in that Plaintiff has been inconvenienced by GM's Recall and accompanying required repairs. As discussed above, Plaintiff will spend hours upon hours tending to GM's recall. The Defect prevented the Class Vehicles from being roadworthy and reliable. But for this defect, Plaintiff would not have had to spend hours upon hours of his life tending to this Recall.

## COUNT III
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
## (15 U.S.C. § 2301 *ET SEQ*.)

73. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

74. Plaintiff brings this Count individually and on behalf of the Class.

75. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332 (a) and (d).

76. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

77. GM is a "supplier" and "warrantor" within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

78. The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

79. 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

80. In its express written warranties, GM expressly warranted that it would repair or replace defects in material or workmanship free of charge if those defects become apparent during the warranty period.

81. GM's warranties are written warranties within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

82. With respect to Class members' purchases of the Class Vehicles, the terms of GM's written warranties and implied warranty became part of the basis of the bargain between GM and Plaintiff and other Class members.

83. GM breached the implied warranty of merchantability. Without limitation, the Class Vehicles have an engine defect, as described above, which renders the Class Vehicles unmerchantable.

84. At the time of sale of each Class Vehicle, GM knew, should have known, or was reckless in not knowing of the Class Vehicles' inability to perform as warranted because of the Defect, but nonetheless failed to rectify the situation and/or disclose the Defect.

85. The amount in controversy of Plaintiff's individual claim exceeds the sum of $25. The amount in controversy in this action exceeds the sum of $50,000, exclusive of costs and interest, computed on the basis of all claims to be determined in this lawsuit.

86. Plaintiff, individually and on behalf of the Class members, seeks all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

## COUNT IV
## NEGLIGENT DESIGN DEFECT

87. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

88. Plaintiff brings this claim against Defendant on behalf of himself and the Class Members.

89. Defendant owed Plaintiff and the Class a duty to reasonably and safely design, manufacture, market, and sell the Class Vehicles.

90. Defendant breached this duty as the design and manufacture of the Class Vehicles was defective, which caused the cars to not be fit or suitable for their intended purposes.

91. Additionally, Defendant's defective design caused monetary damages to Plaintiff and the Class as the Class Vehicles now are worth less compared to the Class Vehicle's value prior to the existence of the Defect, given the notoriety of the Defect.

92. Defendant did not exercise due care in the production of the Class Vehicles. The Defect can cause the Class Vehicles to experience a total engine failure, increasing the risk of injury.

93. Plaintiff suffered injury through Defendant's conduct in that he suffered economic loss and purchased a vehicle that is now worthless and unsafe.

94. Plaintiff also suffered economic loss in reference to the value of his vehicle. As a result of GM's Recall, Plaintiff's Vehicle's resale value is now diminished. When Plaintiff intends to sell his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

95. Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to GM's Recall. Plaintiff has been greatly inconvenienced by the Recall.

96. The design of the Class Vehicles' defect is unacceptable as other vehicles produced by other companies and manufacturers equipped with other engines work properly and do not have this same Defect. In fact, GM has produced other vehicles for decades that do not have defects similar to the Class Vehicles.

97. Plaintiff's Class Vehicle is in virtually identical condition as to when it left Defendant's factory.

98. Further evidence of the Class Vehicles poor quality is the workmanship when compared to industry norms for the lifespan of the defective parts of the Class Vehicles, as mentioned earlier.

## COUNT V
## FRAUD BY OMISSION/CONCEALMENT

99. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

100. Plaintiff brings this count on behalf of himself and the Class.

101. Defendant was aware of the Defect within the Class Vehicles when the Class Vehicles were marketed and sold to Plaintiff and the other members of the Class.

102. Having been aware of the Defect within the Class Vehicles and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of

the Defect, Defendant had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

103. Defendants did not disclose the Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

104. For the reasons set forth above, the Defect within the Class Vehicles comprises material information with respect to the sale of the Class Vehicles.

105. In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Defendant to disclose known material defects with respect to the Class Vehicles.

106. Had Plaintiff and the other members of the Class known of the Defect within the Class Vehicles, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

107. Through their omissions regarding the Defect within the Class Vehicles, Defendant intended to induce, and did induce, Plaintiff and the other members of the Class to either purchase a Class Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

108. As a direct and proximate result of Defendant's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT VI
## UNJUST ENRICHMENT

109. Plaintiff incorporates all previous paragraphs as if fully set forth herein.

110. Plaintiff brings this count on behalf of himself and the Class.

111. Plaintiff, and the other members of the Class, conferred benefits on Defendant in the form of monies paid to purchase GM's worthless Class Vehicles equipped with defective engines.

112. GM voluntarily accepted and retained this benefit. GM had knowledge and appreciation of this benefit, which was conferred upon them by and at the expense of Plaintiff and the Class Members.

113. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Class Vehicles without providing properly functioning engines in the Class Vehicles, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

114. The circumstances, as described herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

115. Defendant manufactured, marketed, and sold the Class Vehicles under the guise of these Vehicles being safe and operable, without failure of the engines. Instead, Defendants sold Vehicles that contained a serious engine Defect.

116. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, on behalf of himself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

A. Certifying the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B. Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

C. Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D. Scheduling a trial by jury in this action;

E. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F. Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G. Any other relief the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: May 9, 2025,

Respectfully submitted,

*/s/ Andrew S. Baker* _
**The Baker Law Group**
89 E. Nationwide Blvd.
2 nd Floor
Columbus, Ohio 43215
Andrew.baker@bakerlawgroup.net
(614) 696-7394
(614) 228-1862 (Fax)

-AND-

Paul J. Doolittle (*Pro Hac Vice forthcoming*)
**POULIN | WILLEY**
**ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403

Tel: 803-222-2222
Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

***Attorneys for the Plaintiff and Class***